We have three cases on our calendar for today, one's on the briefs, so we'll just have two oral arguments. We probably will not need a break this morning. Ms. Hogarth, are you ready to proceed? I am. May it please the Court, Sarah Hogarth for Petitioner. I intend to reserve four minutes for rebuttal. Federal law deems an immigrant inadmissible when convicted of an offense relating to a substance as defined in the federal drug schedules. Alon Simon-Solis was convicted of possessing marijuana for purposes of Colorado law. Marijuana is a federally controlled substance, but Colorado at the time defined more components of the marijuana plant to be, quote, marijuana than its federal counterpart definition. That undisputed disparity is enough to resolve this case. The central question here is whether Mr. Simon-Solis had to point to Colorado case law stating what is plain from the text of Colorado's marijuana definition. The answer is that he didn't. Colorado controls mature stocks of the marijuana plant, and federal law does not. Under the Supreme Court's 2016 decision in Mathis v. United States and a long line of follow-on precedent from this Court, plain textual disparity is enough. That was also the Eighth Circuit's holding in Gonzales v. Wilkinson under a materially similar Florida statute, and it should be the outcome here. Let me focus you on Mathis for a minute. Was Mathis discussing an element or an exception? Mathis was discussing an element of a burglary offense under Iowa law. The term defined was occupied structure, and it was looking at the definition of occupied structure for purposes of Iowa law. And does it matter in terms of whether you have to show a reasonable probability of prosecution whether we're dealing with an element or with an exception? I don't think that that matters here because the element we're talking about is marijuana, and then that element is defined in both federal law and in Colorado law. So that's really what we're focusing on. What does that element mean? And it means two different things here. Well, the element in both of them is all marijuana, right? And then they have certain exceptions from that. So the element I submit is marijuana. That's what needs to be proven to establish the crime. And then the element is defined, and there are means to commit that element, and they're defined as any part of the plant. And so you have to look at that definition to decide what are the ways to have a part of that plant. But I don't think that the exception changes what the element of the crime is, which is marijuana. And so here they're defined differently. And I think that is, Mathis is helpful on that point because the element for purposes of the generic offense of burglary is a structure that is occupied. Under Iowa law, the occupied structure was defined more broadly to include a vehicle when we know that under federal general principles, a vehicle is not the type of structure. And so the different ways to commit that element of the structure were different, and that undisputed disparity was able to resolve the case. What if the offense were possession of a firearm? If there's an exception in federal law for antique firearms, would your reasoning apply the same there? That if the state didn't have an exception for antique firearms, you would prevail? So I think this is what the Supreme Court briefly considered in dicta in Moncrief. And then the Fourth Circuit gave this thorough treatment in Gordon versus Barr. And I think the question is, can you, does the state's statutory text plainly encompass antique firearms in its definition? And you would have to look at the specific definition for that state's law. Now, if we're talking about what generally, I think what Moncrief was getting at is if the state just generally said firearm and hadn't defined it, what do we conceptually think a firearm is? And maybe at that point, we could look to federal law, we could look to other states laws and see, well, do we generally define a firearm to mean antique firearm or not? When you actually got to Gordon versus Barr in a concrete case where the term was defined and the statute reached any firearm and there were indicia that it reached antique firearms, that was enough to decide that it was overbroad. And I think that is kind of the same thing we get here. We're not asking what generally might marijuana mean if we were to look at the laws of many states. We have two very specific definitions under both federal law and Colorado law, and they're just different. Well, I'm not sure I agree with the, I think it was the Fourth Circuit's decision interpreting Moncrief. The language of the court, pretty clear. May I read it to you and tell me why it doesn't make the exact distinction that Judge McHugh was pursuing between an element and an exception. It said, this is from 133 Supreme Court reporter at the end of the opinion. You obviously know the paragraph I'm about to read, but it says, finally, the government suggests that our holding will frustrate the enforcement of other aggravated felony provisions, like 1101A43C, which refers to a federal firearm statute that contains an exception for antique firearms. The government fears that a conviction under any state firearms law that lacks such an exception will be deemed to fail the categorical inquiry. But Duenas-Alvarez requires that there be a realistic possibility, not a theoretical possibility, that the state would apply its statute to conduct that falls outside the generic definition of a crime. To defeat the categorical comparison in this manner, a non-citizen would have to demonstrate that the state actually prosecutes the relevant offense in cases involving antique firearms. Now, the Supreme Court has been very careful about what's an element, what's not. And as long as the elements of the offenses are the same, they consider it to be, under categorical approach, the same offense. And what Moncrief seems to be saying is, if there's an exception in federal law, then the state law applies unless the defendant can show that the state actually prosecutes people who would be exempt under the federal exemption. And I just cannot distinguish our situation here from what the Supreme Court said in Moncrief. Yes, it's dictum. But gee whiz, it's an 8-1 opinion. Is that right? I think there was only one dissent. And that's clearly well-considered dictum. It's not an offhand statement. And I was not impressed with the reasoning of the Fourth Circuit. It just ignored it, essentially. It didn't acknowledge that there's a distinction between elements. I've talked enough. I want to hear what you have to say. Well, I think that the problem is that once the state has given, well, so here, it has to be a drug that's controlled on the federal drug schedules. And both federal and state law have defined what that controlled substance is. And they've defined it pretty plainly differently. And so I think that the dictum in Moncrief just doesn't answer the question where you have two plain definitions that are different when it's talking about generally what might a firearm be. And I think that's— I'm sorry to interrupt. But would you agree that we're dealing in this case with an exception and not an element? If we're dealing with—the element is marijuana, and they— And mature stocks is an exception. I agree that both statutes say any part of the plant, and then federal law excludes from that definition, mature stocks. But we're still— And so, if this court treats dicta of the Supreme Court, we give it as much authority as they're holding when it's plain, wouldn't we be bound by that discussion that Judge Hart's just read from Moncrief? I just don't think that is exactly the situation that the court was getting at here, where you would need to—I don't think that they meant to say that you can't look at plain statutory text for a definition. I think they were referring to generally defining terms like firearm kind of generally. I think it would be strange to then read their decision in Mathis, which did not require this actual case requirement. Well, Mathis was an elements case. Right. But again, the element was occupied structure, which was defined by state law. And that's what we have here, too, is defining what the elements mean. What was the exception in Mathis? Here, the antique firearm statute has the definition of firearm and then a sentence, such term does not include an antique firearm. That's very similar in structure, maybe identical to the marijuana statute. And it's not similar to anything in the Mathis statute that I'm aware of. Right. So the element there would be firearm, and it is defined as broadly firearms, but not a particular subset. But that is defining kind of the same element. How is that different from defining marijuana? Marijuana is this plant, but it excludes this. Firearm is this set of equipment, but excludes an antique. It's structurally identical. And the decision in Mount Creek makes a clear distinction and says, yeah, we've said all this regarding Mathis. The government is concerned about something like the antique firearm exception. Don't be worried, government. In that circumstance, the alien has to show that people are prosecuted for antique firearms. And so my point is that the court wasn't looking at a particular state statute. So generally, if they said firearm, perhaps that's not commonly thought to include an antique firearm. That's my point with respect to that. Let me just pin down one thing. You're not contesting that you have evidence that the state has prosecuted people for stocks, do you? I do not have a particular case of only stocks. I have not pointed to one of those. But we do know from the statutory history that Colorado previously excluded mature stocks and then changed that. And I think the upshot of that necessarily means that people are being prosecuted for this. I just don't have a particular indictment that I can point you to. Unless the court has further questions, I'll reserve my time. I do have a question, but I don't want to imperil your rebuttal time. Go ahead. Ask the question. I'll be generous with time. Thank you. Counsel, did Moncrief deal with the enumerated offense clause? The Moncrief dicta that we're talking about, or the Moncrief holding, was Moncrief dealing with the enumerated offense clause to determine whether something is a crime of violence? It was dealing with aggravated felony. Sorry, my apologies. All right, to determine whether something is an aggravated felony. To your knowledge, has any court, Supreme Court, circuit court, and for that matter, a district court, ever applied the realistic probability test to determine whether something is a state crime is related to a controlled substance offense? That's what we're dealing with here, whether or not this prior crime was related to a controlled substance offense. Has anyone ever applied the realistic probability or actual case test to determine whether something is a controlled substance offense? I think the upshot of the court's cases, and several of them, has been that it's pretty easy to just compare the two drug schedules when you're dealing with those. The actual case requirement has not been imposed quite so much in those circumstances, so I'm not specifically aware of one. Didn't the Fifth Circuit apply it in a cocaine case in Alexis versus Barr? I do not have that in front of me, but the Fifth Circuit applies the actual case requirement essentially in all circumstances, which has been an approach that has not been adopted by this court or any other circuit, so they do. The Ninth Circuit did it in a meth case in United States versus Vega or Tees. Correct, and I believe that predates Mathis, which kind of opened up, including in this court's decision in Tittle, the idea that the plain language of a state statutory text obviates the actual case requirement. And the Ninth Circuit has, more recently in Batista, adopted that similar approach that this court has taken following Mathis. Can I ask one totally unrelated question? And that is, you have a challenge to the denial of the agency's request for sua sponte reopening as well as the denial of the statutory motion to reopen if the court concludes that the agency erred in declining to sua sponte reopen based on the determination that he is admissible um, is your challenge to the denial of the statutory motion to reopen moot? In other words, is there any additional relief that you would be able to obtain through uh, through a vecator of the denial of the statutory motion to reopen if you're allowed sua sponte reopening? So the simplest path, and that's what we urge the court to take, is to grant and vacate based on the legal error and remand to the BIA to sort out those remaining issues. Theoretically, there could be a difference between sua sponte and statutory reopening if, because of the reviewability of those decisions, but I think you can leave that for the BIA to sort out in the first instance and just decide and correct the legal error here. But we would have to, for the sua sponte, we'd have to somehow say that they abused their discretion in not granting it, right? So, so the court has jurisdiction to decide questions of law under USC 1252, so you would be deciding the question of law, which is whether this is a categorical match or not based on the state and federal law. But to, um, for us to say that they have to sua sponte reopen, we not only would have to say there's some issue of law, but we'd have to say that it's unambiguous, right? It's a pretty high standard, isn't it? So the, the only basis for the court's denial of the motion to reopen was this legal question. So vacating that, it would necessarily need to be remanded for them to reconsider whether with the correct legal framework to sua sponte reopen or not. But if we thought it was ambiguous because of Moncrieff's dicta, then we wouldn't be able to remand for it to sua sponte consideration. So, so two different things. So I think that question goes to equitable tolling, whether there was a material change in the law such that this should be treated as statutory reopening, but the BIA's basis for denying sua sponte reopening is just a straight question of law. What does, what did this categorical approach require or not? So I think they could, or just based on that legal question is appropriate, even in the sua sponte context. And I will. Okay, Ms. Suarez, if you turn on your mic. Very good. Thank you. May it please the court, Anna Juarez for the respondent, Attorney General. Here, petitioner fails to identify any legal or constitutional error in the board's determination that equitable tolling or sua sponte reopening would be warranted. Was petitioner's heavy burden to establish cause for reopening? And further, it was petitioner's burden to establish prima facie eligibility for the relief. And specifically, it was his burden to show that he was not inadmissible for having been convicted of a violation of a law or regulation relating to a controlled substance. And for an offense to relate, there just must be a connection between an element of the conviction and the federally controlled substance. And here, as we've recognized, the federal definition contains the exception for stocks of marijuana. The Colorado statute is silent. The statute's silence does not tell us how the statute is actually applied. Your adversary's argument that the state statute is anything but silent because it specifically and expressly says that all parts of the cannabis plant are included in the definition of marijuana. Petitioner is relying on it needs to be plain language under the law of this court in order to not apply the realistic probability test. But as this court, as your honors have been recognizing, Moncrief controls here. Well, I'm not asking about Moncrief dicta. I'm just asking, what is it? When you say that the state statute is silent and I read a statute saying that all parts of the cannabis plant are included in the definition of marijuana, it seems like a very difficult and counterintuitive interpretation to say that the state statute is silent. What's silent about saying that all parts of the cannabis plant are included in the definition of marijuana? Both the Colorado statute and the federal statute say all parts, and then they go through various exceptions and what's included and what's not included. The federal one is the only one that includes, at this time, the mature stocks. And as is widely recognized, mature stocks are not usable parts of the plant. And the board recognized that in Navarro-Guadarrama, the Colorado Constitution, Article 18, Section 14, defines usable parts of marijuana as the seeds, leaves, buds, and flowers. And it does not include the stock stems and roots. But it does include fibers from the stocks, the fibers from the mature stocks of marijuana, which suggests to me, if anything, that that substantiates the plain language where it says that all parts of the cannabis plant are included in marijuana, if you're going to exclude the fibers only, doesn't that implicitly strongly suggest that the stocks themselves are not excluded? It could, but the federal definition also has that exception. For fibers associated with the stocks? For fibers and stocks, it also mentions that. So I don't think we can step that far. And as Judge Hertz noted, the firearms example in Moncrief is very similar to here. And Moncrief itself was a drug trafficking aggravated felony. But regarding the distribution of marijuana, there was an exception in the federal law for the small amounts. There wasn't in the state law. The Supreme Court found in that case, where there isn't the exception in the state statute, that we need to apply the realistic probability test. Well, Judge Bachrach pointed out in his questioning of your opponent that Moncrief was an aggravated felony case, and we're looking at applying the realistic probability test here to a controlled substance offense. Is that a difference that's meaningful? And should that affect whether the Moncrief dicta should even apply here? It should apply here. Realistic probability has been applied in various different categorical approaches in this situation where there's not an exception. And Your Honor noted some Ninth Circuit cases and a Fifth Circuit case. And this court has been applying the realistic probability in various applications. For example, in United States v. Winder, the petitioner was arguing there that the phrase any impairment of physical condition was too broad to meet the definition of violent force. And the court gave some examples of different nonviolent ways it could be violated. The court applied the realistic probability test and found no indication that that would be the case, that the state would actually prosecute that. And that was a post-Mathis case. Also in United States v. Mendez and United States v. Pam are also post-Mathis. So this court is still applying the realistic probability test even after Mathis. Petitioner's been relying solely on the cases that have explicit terms in those state definitions. Like maybe there's an additional type of controlled substance that's been identified in the state statute. And this court has determined that it is plain language there. There's no need to apply this realistic probability test when the state statute explicitly mentioned something additional. And here we don't have that explicit addition. And in those cases, Mathis probably does apply. There's maybe additional elements we need to break it down. Let me ask you, Ms. Juarez, you know, you mentioned Mendez, you mentioned Judge Hartz's opinion of Winder. In both of those cases, and in Juarez v. Alvarez, all of those cases, at least from the Supreme Court in our cases, where the court, that I recall at least, that where the court has applied the realistic probability or actual case test are situations where, for example, where Judge Hartz identified these hypothetical scenarios, or Perez-Vargas, where there are possible scenarios. I'm wondering, let's say we adopt your position. And I am in 2007 charged with possession of marijuana in Colorado. And I have mature stalks of marijuana. How is it that a petitioner or a defendant could ever show that they were prosecuted based on having mature stalks? Because it wouldn't even be a relevant defense. It wouldn't even be a relevant factor. If I am charged with having mature stalks, and I say, well, the mature, you know, these are mature stalks of marijuana, and they shouldn't be considered, I presume that the prosecutor would say, what part of the statute can you read, Bob Bacharach? It says all parts of the cannabis plant are considered. And so this is unlike any of those hypothetical, bizarre scenarios, you know, where we talked about it in Winder and at Bendez, because I'm not sure how a petitioner or defendant could ever show that they were or weren't prosecuted based on mature stalks, because it would never even have any relevance. The judge would exclude it, presumably, as irrelevant. I, and this case isn't cited in our brief, and I apologize for that. In People v. Douglas, it's a Colorado Court of Appeals case from 2015, and it's 412P3,785. It was actually dealing with possession of intent to manufacture, distribute five pounds or more of marijuana, and the defendants in that case were arguing that it was not usable marijuana, that they were contesting that the amount, that it wasn't usable, and this was 2015. And the court looked and saw that the jury instructions, the jury instructions advised the jury what the usable parts of marijuana were, and so the court assumed that the jury was then aware when it reached its conclusion that these were usable, that the marijuana was usable parts of marijuana, and also the Colorado Constitution that defines the usable parts of marijuana. I would assume it's a defense that someone could use. I don't know if they have, and as we've noted, petitioner hasn't identified any cases where someone's been prosecuted for having the mature stalks, which is what they would need to show in order to show that this doesn't match the federal statute. They need to show that they would be prosecuted for having only the non-federally controlled substance, which is just mature stalks of marijuana, and those not being a usable form, it's unlikely, and they haven't shown anything that that's the case. Let me switch you to a different topic if my colleagues are ready for that. Why wasn't the notice here a violation of the claims processing rule that would allow this action to be dismissed? Petitioner brings up, to this court, in the first instance, didn't exhaust it before the board any claims processing claim, and in the case that petitioner cited, Martinez-Perez doesn't really, I don't believe it goes into the timeliness of it, the Seventh Circuit in Ortiz-Santiago addressed the timeliness of this claims processing possibility, that it's a procedural issue, and in that case, the Seventh Circuit noted that if it's a procedural issue, a petitioner should have brought it up to the immigration judge after the notice was issued, and in the Seventh Circuit case, bringing it up to the board after Pereira was too late, and here, the claims processing is just coming up for the court, hasn't even been presented to the board to consider yet, so we would argue that it's untimely, and this court, last month, in Nunez-Robles v. Garland, considered a claim based on Martinez-Perez and claims processing, and rejected it, and found that the immigration judge had jurisdiction to order the removal. I'm happy to answer any other questions, if there are any. What is the standard? Judge McHugh suggested that in reviewing a sua sponte grant of rehearing, we can reverse that only if there's an abuse of discretion. And for that, for an error of law to be an abuse of discretion, it has to be a clear error of law. Go ahead. What is your understanding of the standard of our review in that circumstance? Yeah, for motions to reopen in general, it's the abuse of discretion standard, and this court has recognized that sua sponte, there's no jurisdiction unless the board has made a legal error in its determination, and I think we cite Olivas-Melendez, where the court found that only if the board relied on an erroneous understanding of a question of law, would the court then jump in and find jurisdiction over sua sponte denial of relief. But it's a... Well, how clear does the error have to be? That's the question. It's not... If we, after a thorough analysis, decide, perhaps in a split panel split decision, that it's an error of law, why isn't that enough? I think if the board, if the court determined that the board's understanding of this law was legally incorrect, that the board did not understand the precedent and was legally incorrect, I think that would be the case for having jurisdiction over sua sponte denial. But if the argument is that there's been a change in the law, for example, then we have to find that the change in the law is so significant and its impact is so unambiguous that we should step in, right? If we're talking about a change in the law as opposed to a static error of law, is that correct? Correct. And in this case, it's... And petitioners relying on 2017 cases that we believe do not apply in this case and aren't a fundamental change in the law. It's... So we would encourage the court to deny this petition for review. Okay. Thank you, counsel. I'll give you a minute. Rebuttal. Thank you. To be clear, the question of law and the legal error that this court can correct should be looked at de novo, and it should be corrected and remanded to the board, which relied only on that legal error. But I'd like to... Can I ask for clarification? Are you arguing a change in the law? That would be under equitable tolling to have the benefit of statutory reopening, but the error of law can be corrected regardless, and the court should do that. And the error is clear here. Colorado statute plainly applies to conduct that is broader than federal marijuana definition. That much is clear from the way the statutory history developed. Colorado excluded mature stocks before. Prosecutions were thrown out for not negating that, and so Colorado decided mature stocks should be criminalized too. That is plain from the text of the statute. That difference from federal law is all this court needs to resolve this case. I'm sorry, would you repeat that historical information you gave? Yes. You said the statute was changed because convictions had been thrown out because the evidence included stocks? So best as I can tell, in 1979, if people be injurious, the Colorado Court of Appeals tossed out a conviction because the prosecution had not proven the negative of no mature stocks. And then in the mid-80s, the legislature removed a mature stocks exclusion. I don't have specific legislative history, but they do have the statutory history of how that progressed of taking that exclusion out to reach mature stocks. And that was half a dozen years you say? Yes, sometime between 1985 and 93, when the new Controlled Substances Act was reenacted without a mature stocks exclusion. That's it. Thank you. Oh, you guys switched your positions on the screen. I got confused there. Thank you. Case is submitted. Counselor excused.